UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

SOFIA KURTZ,

                             Plaintiff,

            -v-

UBER TECHNOLOGIES, INC.,

                            Defendant.

21 Civ. 6188 (PAE)

OPINION AND ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

      This personal injury action, arising from a car accident, is here following removal from state court. Plaintiff Sofia Kurtz ("Kurtz"), a pedestrian, claims to have been struck by a car driven by Santos Colindres ("Colindres"). Kurtz filed separate actions in New York State Supreme Court arising from the accident. The first was filed against Colindres ("*Kurtz I*"). The second—this case—was filed nearly 11 months later, against Uber Technologies, Inc. ("Uber") ("*Kurtz II*"), for which Colindres was a driver at the time of the accident. Uber timely removed *Kurtz II* to this Court, based on diversity of citizenship. *Kurtz I* remains pending in state court.

      Kurtz now moves to remand this case pursuant to 28 U.S.C. § 1447(e), in the hope that such remand will permit the two cases she initiated to be consolidated in state court. Kurtz relies on caselaw construing § 1447(e) to give district courts discretion to remand properly removed cases where the interest of judicial economy would be served by consolidation with a related state-court action. Uber counters that it has a statutory right to remain in federal court, and that, regardless, discretionary factors disfavor remand.

      For the following reasons, the Court denies Kurtz's motion to remand.

**I.     Background**[1]

On January 25, 2020, Colindres, while working as an Uber driver, struck and injured Kurtz with his car as she was crossing East 9th Street in Manhattan. Kurtz sustained physical injuries from the collision, including a left knee patella fracture.

On May 27, 2020, Kurtz filed *Kurtz I*: an action against Colindres in New York State Supreme Court in Brooklyn. She alleged that Colindres had been negligent in his control, operation, ownership, and maintenance of his car. She sought to recover for the injuries she had sustained in the accident. Limited progress has been made in the case. Kurtz has filed a verified bill of particulars, but no depositions, independent medical examinations, or extensive document discovery have taken place in *Kurtz I*.[2]

On April 16, 2021, Kurtz filed *Kurtz II*: an action against Uber arising out of the same accident, also in New York State Supreme Court in Brooklyn. She principally alleged that Uber had negligently hired, screened, supervised, and trained Colindres. She again sought to recover for the injuries she had sustained in the accident. On July 2, 2021, Uber filed its answer.

---

[1] The Court draws the following account from these filings (and attachments) in this case: Uber's notice of removal, Dkt. 3; Kurtz's motion to remand, Dkt. 9; Uber's memorandum of law in opposition to remand, Dkt. 11; Kurtz's reply in support of remand, Dkt. 12; Uber's letter dated September 17, 2021, Dkt. 16; and Kurtz's letter dated September 17, 2021, Dkt. 17. "When considering a motion to remand, the district court accepts as true all relevant allegations in the complaint and construes all factual ambiguities in favor of the plaintiff." *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006) (citation omitted).

[2] A July 1, 2021 order in *Kurtz I* set out a preliminary discovery schedule. It set deadlines of July 27, 2021, for exchanging authorizations, and for opposing party statements, photographs and accident reports; January 12, 2022, for depositions; and 45 days after depositions for physical examinations of Kurtz. *See* Dkt. 18 in *Kurtz v. Colindres*, Index No. 508152/2020, NYSCEF. In response to the Court's inquiry, Kurtz has represented that, as of September 17, 2021, no deposition or independent medical examination had taken place. Dkt. 17 at 2.

On July 20, 2021, Uber timely removed *Kurtz II* to this Court. The basis for removal was diversity jurisdiction, insofar as Kurtz is a Georgia resident, Uber is incorporated in Delaware with its principal place of business in California, and the amount in controversy appeared to exceed $75,000. Dkt. 3 ¶¶ 7, 15–17.

As of Uber's removal, Kurtz had not moved in state court to consolidate her two actions. However, two days later, on July 22, 2021—after Uber's removal had deprived the state court of jurisdiction over *Kurtz II*—Kurtz moved in state court to do so. And, on August 4, 2021, Kurtz moved in *Kurtz I*, to add Uber as a defendant.

On August 9, 2021, Kurtz moved in this Court to remand this action to the state court to allow for consolidation with *Kurtz I*. Dkt. 9. On August 24, 2021, Uber filed a memorandum of law in opposition. Dkt. 11. On August 27, 2021, Kurtz filed a reply. Dkt. 12.

On September 14, 2021, the Court issued an order directing counsel to submit letters addressing (1) why the case had been removed to this District, rather than the Eastern District of New York, inasmuch as *Kurtz II* had been filed in state court in Brooklyn; (2) the status of discovery and pretrial proceedings in *Kurtz I*; and (3) why Kurtz had not joined Uber in *Kurtz I*, or, prior to the motion to remand, sought to consolidate *Kurtz I* and *Kurtz II*. Dkt. 15. On September 17, 2021, Uber and Kurtz each responded. Dkts. 16, 17.

## II. Discussion

The Court considers, first, the propriety of Uber's removal of this case to federal court. Finding the removal proper, the Court then considers Kurtz's bid for a discretionary remand to facilitate the consolidation in state court of the two cases she has brought arising out of accident.

### A. Propriety of Uber's Removal

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the

3

district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). District courts have original jurisdiction over cases in which the parties are "citizens of different states," and where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Diversity must be complete, which is to say that every plaintiff must be diverse from every defendant. *Strawbridge v. Curtiss*, 7 U.S. 267 (1806). Removal must also be timely. As relevant here, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

On a motion to remand, "the defendant bears the burden of demonstrating the propriety of removal." *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (citation omitted). When removal is based on diversity jurisdiction, "the party invoking jurisdiction bears 'the burden of establishing that the requirements for diversity jurisdiction [are] met.'" *McGrath v. Indus. Waste Techs.*, 20 Civ. 2858 (KPF), 2021 WL 791537, at *4 (S.D.N.Y. Feb. 26, 2021) (quoting *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)). "[R]emoval statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Am. Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 715 (S.D.N.Y. 2007) (citations omitted); *see also Hill v. Delta Int'l Mach. Corp.*, 386 F. Supp. 2d 427, 429 (S.D.N.Y. 2005) (grounding this principle in "respect for the independence of state courts").

These standards are met here—and in pursuing remand, Kurtz does not argue otherwise. The parties are diverse, as Kurtz is a resident of Georgia, Dkt. 3 ¶ 16, and Uber is a Delaware

4

company with its principal place of business in California, *id.* ¶ 17. As to the amount in controversy, Kurtz's complaint does not specify the precise damages she seeks. But she pursues special damages to compensate her for past, present, and future doctor and hospital bills and for pain and suffering from her injuries, which, she alleges, include a left knee patella fracture, a forehead concussion, contusions of the arms and leg, and right knee pain. *Id.* ¶¶ 13–14. Kurtz does not dispute Uber's assessment that the amount in controversy therefore exceeds $75,000. *Id.* ¶ 15. The Court therefore has diversity jurisdiction over this case. And Uber's removal was timely. Uber represents without contradiction that it first learned that the amount in controversy could exceed $75,000 on July 8, 2021, when it received Kurtz's verified bill of particulars, *id.* ¶¶ 7, 11, and removed the case 12 days later, on July 20, 2021, *see id.*

A separate issue regarding venue—not raised by the parties—is presented by Uber's removal to this Court. Kurtz filed this action in state supreme court in Kings County (Brooklyn). By statute, Uber's removal therefore was required to be removed to the United States District Court for the Eastern District of New York. *See* 28 U.S.C. § 1441(a) (removal is to be "to the district court of the United States for the district and division embracing the place where [the state] action is pending").[3] Such a defect, however, goes to venue, and not subject matter

---

[3] Although removal to this District was therefore procedurally improper, there does not appear to have been a viable factual basis for Kurtz to have filed this action in Brooklyn. The parties agree that the accident in this case took place, as Kurtz's complaint alleged, "at Avenue B at or near its intersection with East 9th Street," Dkt. 3-1 ¶ 13, an address the parties agree is in Manhattan. *See* Dkt. 16 at 1; Dkt. 17 at 1. Kurtz's complaint, however, erroneously situated this address in Kings County. *See* Dkt. 3-1 ¶ 13. The parties have not identified any factual basis for a Brooklyn venue for this lawsuit, *Kurtz II*. (In contrast, as Kurtz has explained, Brooklyn was a proper venue for *Kurtz I*, based on the Brooklyn residence of the defendant there, driver Colindres. *See* Dkt. 17 at 1.) Uber explained that it opted to remove the case to this District "because venue was never proper in the Supreme Court of the State of New York, Kings County, as the events giving rise to this action occurred within New York County and neither party resides in Kings County." Dkt. 16 at 1.

5

jurisdiction, and therefore may be waived by the plaintiff. *See Kennedy v. LaCasse*, No. 17 Civ. 2970 (KMK), 2017 WL 3098107, at *6 (S.D.N.Y. July 20, 2017) (collecting cases). In her motion to remand, Kurtz did not object to Uber's removal on grounds of improper venue, *see* Dkt. 9. And after the Court *sua sponte* inquired whether the case had been incorrectly removed to this District and whether Kurtz sought transfer of this matter (including her pending remand motion) to federal court in the Eastern District, Dkt. 15, Kurtz again did not object to venue in the Southern District. On the contrary, Kurtz stated that she regarded venue in this District as proper because the collision had occurred in Manhattan. *See* Dkt. 17 at 1. Kurtz has therefore waived any basis to challenge removal on the grounds of improper venue.

Uber's removal of this case, including to this District, was thus proper.

**B.   Kurtz's Application for Discretionary Remand**

The Court next turns to Kurtz's application, notwithstanding the propriety of Uber's removal, for a discretionary remand.

As statutory authority for such a remand, Kurtz relies on 28 U.S.C. § 1447(e). Section 1447(e) provides: "If after removal, the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Courts considering motions for such diversity-destroying joinders engage in a two-part analysis. *See, e.g., Durstenberg v. Electrolux Home Prods., Inc.*, No. 15 Civ. 9277 (CM), 2016 WL 750933, at *1 (S.D.N.Y. Feb. 23, 2016). First, the joinder must satisfy Federal Rule of Civil Procedure 20, which permits a joinder of multiple defendants in one action "if there is asserted against [the defendants] any right to relief in respect of or arising out of the same transaction or occurrences and if any question of law or fact common to all defendants will arise in the action." *Nazario v. Deere & Co.*, 295 F. Supp. 2d 360, 363 (S.D.N.Y. 2003) (quoting Fed. R. Civ. P. 20). Second, diversity-

6

destroying joinder is appropriate "only when consistent with principles of fundamental fairness as appraised using the following factors: (1) any delay, as well as the reason for delay, in seeking joinder; (2) resulting prejudice to defendant; (3) likelihood of multiple litigation; and (4) plaintiff's motivation for the amendment." *Id.* Of these, the last factor generally "is the most significant consideration in the fairness analysis." *Grant v. Johnson & Johnson, Inc.*, 17 Civ. 3356 (GBD), 2017 WL 6812035, at *3 (S.D.N.Y. Dec. 19, 2017); *see Nazario*, 295 F. Supp. 2d at 364; *Briarpatch Ltd., L.P. v. Pate*, 81 F. Supp. 2d 509, 515 (S.D.N.Y. 2000). The decision whether to permit joinder of a party that would destroy the Court's diversity jurisdiction "is within the discretion of the trial court." *Lebetkin v. Gray*, No. 18 Civ. 8170 (DLC), 2018 WL 5312907, at *2 (S.D.N.Y. Oct. 26, 2018) (citation omitted).

Here, Kurtz's application is not within the literal scope of § 1447(e). That is so for two independent reasons. First, she does not seek to join the driver, Colindres, to this action. Rather, she seeks a remand to enable her to move in New York State supreme court to consolidate this case (*Kurtz II*) with her long-pending state-court action against Colindres (*Kurtz I*). Second, even if Kurtz had sought to join Colindres in this lawsuit, that joinder would not destroy diversity, because there is no defendant who shares Colindres's New York citizenship.[4]

In pursuing this bid, Kurtz relies on a limited line of cases in which district courts, notwithstanding proper removals, have granted remand motions that did not strictly satisfy § 1447(e). In one such case, the plaintiff did not explicitly seek to join a diversity-destroying

---

[4] Such a joinder, if made in a state-court case, would, however, limit Uber's ability to remove from New York state court to federal court on the basis of diversity of citizenship, in light of Colindres's New York citizenship. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 704–05 (2d Cir. 2019).

7

defendant, but the court construed the motion effectively to do so. *See Vanderzalm v. Sechrest Indus.*, 875 F. Supp. 2d 179, 182 (E.D.N.Y. 2012). *See also Groh v. Monestero*, No. 13-1188, 2013 WL 1809096, at *2 (E.D. Pa. Apr. 29, 2013) (same); *Mammano v. Am. Honda Motor Co.*, 941 F. Supp. 323, 324–25 (W.D.N.Y. 1996) (same).[5] In three others, the plaintiff could not be construed, even implicitly, to seek to join a diversity-destroying defendant. The district courts in each case nevertheless remanded in the interests of enabling consolidation with a parallel pending state court action, on the ground that "[t]he most logical, economical, and equitable approach is to determine the respective rights and liabilities of all relevant parties *inter se* in one proceeding." *Nnaji v. Guzman Fernandez*, 21 Civ. 1559 (KPF), 2021 WL 2433850, at *4 (S.D.N.Y. June 15, 2021) (quoting *Mensah v. World Truck Corp.*, 210 F. Supp. 2d 320, 322 (S.D.N.Y. 2002) (further citation omitted)); *see also Reyes v. Rite-Line Transp., Inc.*, No. 13 Civ. 968, 2013 WL 3388975, at *4 (S.D.N.Y. July 8, 2013). These courts have found broader discretion to remand than textually afforded by § 1447(e), based on "the policy rationale of § 1447(e) [which] could, and should, extend to avoid 'multiple and duplicative litigation.'" *Nnaji*, 2021 WL 2433850, at *4 (quoting *Reyes*, 2013 WL 3388975, at *4 (quoting *Mensah*, 210 F. Supp. 2d at 322 (quotation marks omitted))). In deciding whether to remand in the absence of a diversity-destroying defendant, these courts have considered (1) whether denying remand would cause duplicative litigation and discovery, (2) the risk of inconsistent outcomes, and (3) the prejudice each party would suffer. *Id.* at *5.

---

[5] Kurtz also relies on *Duino v. CEM W. Vill.*, No. 18 Civ. 10249 (CM), 2020 WL 3249214 (S.D.N.Y. June 16, 2020), *Leifer v. JPMorgan Chase Bank*, No. 18 Civ. 7477 (PGG), 2020 WL 1130727 (S.D.N.Y. Mar. 9, 2020), and *Durstenberg, supra*, 2016 WL 750933. But those cases are inapposite, because the plaintiffs there sought to join a diversity-destroying defendant, such that § 1447(e) squarely applied.

In pursuing remand here, Kurtz puts special weight on *Nnaji*, *Reyes*, and *Mensah*. Uber counters that a remand would breach its statutory right to removal. Dkt. 11 at 8.

Uber is correct that a remand here would sit uneasily alongside the text of § 1447(e), which affords a limited charter for a remand following a proper removal based on circumstances that undisputedly are not present here (an attempt by the plaintiff to join a diversity-destroying defendant). However, the Court need not resolve here whether such extra-textual authority exists, as the *Nnaji*, *Reyes*, and *Mensah* courts each at least implicitly found. That is because, even assuming such authority exists, the Court would not exercise it so as to remand here, for two reasons.

First, this case arises in a far different posture—one far less sympathetic to the moving plaintiff's remand motion—than *Nnaji*, *Reyes*, and *Mensah*. In *Mensah*, the parties consented to a remand. *See* 210 F. Supp. 2d at 322. And in *Nnaji* and *Reyes*, the plaintiffs moving for remand in the federal actions, in the interests of joinder and efficiency, were *defendants* in their parallel state court actions. Here, in contrast, Kurtz was the plaintiff who brought both *Kurtz I* and, nearly a year later, *Kurtz II*. As such, she is responsible for the predicament in which she now finds herself: pursuing tort claims against separate defendants, one in state court and the other in federal court, arising out of the same automobile accident. It was long in her control to avoid this. She could have named Uber as a defendant to *Kurtz I*, whether at the outset of that litigation or later. Or, after promptly after filing *Kurtz II* in state court, she could have moved to consolidate it with *Kurtz I*.

Instead, Kurtz inexplicably waited more than three months after filing *Kurtz II* to move to consolidate the two cases—and first did so two days after Uber timely removed *Kurtz II* to this court. Kurtz's delinquency in failing to join the two defendants in state court is particularly

glaring because doing so would have effectively blocked Uber's removal, under 28 U.S.C. § 1441(b)(2), given Colindres's New York citizenship. *See* note 4, *supra*. Having separately sued Colindres and Uber in state court, and having long foregone the opportunity to consolidate her claims in state court, Kurtz is ill-positioned to claim inequity or prejudice from having to pursue her claims against Colindres and Uber in two fora. *See McDermott Inc. v. Indus. Risk Insurers et al.*, No. Civ. A. 03-402 (KDE), 2003 WL 21362330, at *6 (E.D. La. June 10, 2003) (denying remand where "[p]laintiff created this situation by filing a separate state court action against a diverse defendant *after* it already had filed a non-removable suit, arising out of the same factual occurrence, against other defendants"; in finding no reason to deprive defendant "of the federal forum allowed it by the removal statute," court noted that plaintiff took several months to "manifest[] a desire to try all of its claims arising out of [the underlying incident]" and had "offered no satisfactory explanations for" its failure to move to consolidate before removal) (emphasis in original).

Second, although uniting Kurtz's claims arising out of the car accident in a single case would be most efficient—the animating concern in the *Nnaji*, *Reyes*, and *Mensah* line of cases— the inefficiencies from separate proceedings here are tolerable and manageable. There has been virtually no discovery taken in *Kurtz I*. There is thus every opportunity to organize discovery across the two cases to achieve maximum efficiency. The areas of discovery common to the two cases include discovery relating to the events of the accident and the damages that Kurtz claims to have incurred. There is no reason why discovery into such areas cannot be coordinated so as to avoid duplication. The Court expects, for example, that counsel in the two cases—and Kurtz's counsel in each is the same—will coordinate to assure that single depositions are taken each of Kurtz, Colindres, any other fact witness as to the accident, and any witness, fact or expert, as to

10

Kurtz's injuries, physical or emotional. The case management plan that this Court will put in place will task counsel with assuring such synchronization.

To be sure, separate trials would be needed in the two cases, given their different fora. Such would give rise—in the statistically unlikely scenario that neither case were resolved before trial—to the possibility of duplicative litigation of common issues and of inconsistent outcomes. But sensible case management can assure that common issues are not needlessly litigated twice. It may make sense, for example, for *Kurtz II* to be tried only after *Kurtz I*. That is because *Kurtz II* subsumes the liability question presented in *Kurtz I* (whether the accident resulted from Colindres's negligence) while adding a liability question specific to Uber (if so, whether Uber is responsible for Colindres's negligence). Depending on its direction, the verdict in *Kurtz I* might have preclusive effect in *Kurtz II*. For example, a verdict of no negligence on Colindres's part in *Kurtz I* might estop Kurtz from pursuing anew in *Kurtz II* claims based on Colindres's negligence.[6]

All in, the Court's judgment is that the efficiencies gained by a common forum do not outweigh Uber's statutory right to a federal forum. That is particularly so in light of Kurtz's demonstrated lack of interest in consolidation and coordination. As in other cases in which such

---

[6] Under collateral estoppel, any "issue raised in a subsequent suit" is precluded if it "was 'actually and necessarily determined' in a prior litigation; this precludes a party from relitigating the same issue based on a different cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). To determine whether such estoppel applies, a court examines whether "(1) the identical issue was raised in a previous proceeding; (2) the issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; (4) the resolution of the issue was 'necessary to support a valid and final judgment on the merits.'" *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (quoting *Cent. Hudson Gas & Elec. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995)). Because Kurtz is a party to (and indeed initiated) both suits, claims of estoppel on litigated issues decided against her in *Kurtz I* on which she had a full and fair opportunity to litigate have the potential to estop her in *Kurtz II*.

concerns did not carry the day, this Court denies the motion to remand, and vindicates defendant Uber's right to a federal forum. *See, e.g., Koch v. Pechota*, No. 10 Civ. 9152 (RWS), 2012 WL 2402577, at *5–6 (S.D.N.Y. June 26, 2012) (denying remand where diversity jurisdiction requirements were met, plaintiff did not seek to join a diversity-destroying defendant, there were qualitative differences among the claims at issue, and efficiencies from consolidation of the cases were not overriding concern); *see also McDermott*, 2003 WL 21362330, *5–6; *Gissim, Inc. v. Scottsdale Ins. Co.*, No. 16 Civ. 3306 (ILG) (SLT), 2016 WL 7413488, at *2–3 (E.D.N.Y. Dec. 22, 2016) (denying remand where diversity jurisdiction requirements were met, plaintiff did not seek to join a diversity-destroying defendant, and existence of "qualitatively different" claims reduced interest in efficiency such that it did not outweigh statutory right to a federal forum); *Davis v. Mack*, No. 18 Civ. 2581 (PJS) (ECW), 2018 WL 5263284, at *6–7 (D. Minn. Oct. 23, 2018) (denying remand where plaintiff delayed by four months in moving to join a diversity-destroying defendant from a related state court action).

## CONCLUSION

For the foregoing reasons, the Court denies Kurtz's motion to remand this matter to state court. The Clerk of Court is directed to terminate the motion pending at Dkt. 9.

This case will now move briskly forward, with discovery to be closely coordinated with *Kurtz I*. A case management order will issue shortly scheduling an initial pretrial conference and directing counsel, in advance, to submit a proposed case management plan that provides for such coordination.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: October 13, 2021
New York, New York